UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN BARTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV183 CDP |
| | ) |
| JOHN BOMMARITO | ) |
| OLDSMOBILE-CADILLAC, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

John Bartis worked for defendant John Bommarito Oldsmobile-Cadillac as a car salesman. Bartis alleges that he was fired after he complained about and refused to comply with what he believed to be unlawful employment practices. Bartis asserts claims for retaliatory discharge under the Fair Labor Standards Act and under state law. Bommarito has moved to dismiss, arguing that, by simply complaining to his supervisor, Bartis did not engage in any protected activity that would shield him from retaliatory discharge. Because I conclude the FLSA and Missouri state law do not prohibit an employer from terminating an employee merely because the employee raised workplace complaints, I will grant defendant's motion to dismiss.

### Background

According to his complaint, Bartis worked as a car salesman for John Bommarito Oldsmobile-Cadillac from July 2005 until he was terminated on August 1,

2008. Beginning in January 2007, the car dealership instituted a policy whereby employees were required to sign and submit a "salesman weekly sheet" when submitting the hours that each salesperson worked for the week. The sheet contained a provision that read, "Any time worked over and beyond designated times is voluntary without pay." Bartis signed his weekly sheets, although he believed this provision violated the law. Bartis claims that in weeks when he did not have any sales, he was paid minimum wages for a 40-hour work week, even though he regularly worked 50 to 60 hours per week.

On August 1, 2008, Bartis informed his supervisor that he was no longer comfortable signing the form. Bartis's employment at the dealership was terminated that same day. Bartis asserts three counts in his complaint: one for retaliatory discharge under the FLSA, one under state law for wrongful discharge for reporting violations of the law or public policy, and one under state law for wrongful discharge for refusal to perform an illegal act. Defendant has moved to dismiss all three counts.

Discussion

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. While the complaint need not contain detailed factual allegations, the plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a 12(b)(6) motion, a court must assume that the factual allegations of the complaint are true and must construe these allegations in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all the necessary allegations. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). The issue is not whether the plaintiff will ultimately prevail but whether he is entitled to present evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A. <u>Wrongful Discharge Under FLSA</u>

The Fair Labor Standards Act makes it unlawful to discharge or to discriminate against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding . . ., or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation, a plaintiff must show that he participated in statutorily protected activity, that the defendant took an adverse employment action against him, and there was a causal connection between the two. *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034-35 (8th Cir. 2005). Traditionally, the Supreme Court and the circuit courts have noted that the FLSA should be broadly construed by "look[ing] to its animating spirit." *Brock v. Richardson*, 812 F.2d 121, 124 (3d Cir. 1987). *Cf. Holden v. Hardy*, 169 U.S. 366, 397 (1898). In enacting § 215(a)(3), Congress "sought to foster a climate in which

compliance with the substantive provisions of the Act would be enhanced," by recognizing that "fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 US. 288, 292 (1960). *See also Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) (noting that the FLSA "must not be interpreted or applied in a narrow, grudging manner"); *Saffels v. Rice*, 40 F.3d 1546, 1549 (8th Cir. 1995) ("The purpose of § 15(a)(3) is not merely to vindicate the rights of complaining parties, but to foster an environment in which employees are unfettered in their decision to voice grievances without fear of economic retaliation or reprisal.").

On its face, the FLSA protects against unlawful discharge anyone who "files" a complaint, "institutes" a proceeding, "testifies" in any such proceeding, or "serves" on an industry committee. John Bartis argues that, broadly construed, the statute ought to protect someone in Bartis's position who raises objections with his supervisor about employment practices he believes to be unlawful.[1] There is a split among circuit courts as to whether the FLSA anti-retaliation provision may be construed in this way. The First, Third, Sixth, Seventh, Ninth, Tenth, and Eleventh circuits have all held that informal workplace complaints are protected from

---

[1] Bartis does not now maintain that the employment practice about which he complained, i.e., refusal to pay overtime to a car salesman working on commission, actually violates the FLSA. *See* 29 U.S.C. § 213(b)(10)(A) (exempting from maximum hour requirements "any salesman . . . primarily engaged in selling or servicing automobiles . . .").

retaliation.[2] The Second and Fourth Circuits, on the other hand, have held that workplace complaints are not covered.[3]

In the Eighth Circuit, district courts are guided by the decision in *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975). In *Brennan*, the government brought suit against an employer after the employer withheld overtime compensation from its employees. The employer had agreed to pay the overtime after a Department of Labor investigation found violations of the FLSA. But then the employer required the employees to endorse their back-wage checks over to the employer. One employee was terminated after she refused to do so. *Id*. at 180. The court held that the employee's discharge was unlawful retaliation in violation of § 215(a)(3).

---

[2]*See Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc) (holding that "in order for the anti-retaliation provision to ensure that fear of economic retaliation not operate to induce aggrieved employees quietly to accept substandard conditions, it must protect employees who complain about violations to their employers"); *Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 41 (1st Cir. 1999) (holding that the retaliation provision of the FLSA extends to an employee who has lodged a written internal complaint); *E.E.O.C. v. Romeo Comty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992) (noting that "it is the assertion of statutory rights which is the triggering factor, not the filing of a formal complaint"); *Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 938 F.2d 797, 798 n.3 (7th Cir. 1991) ("Section 215(a)(3) has been construed broadly to include retaliation by the employer for an employee's assertion of rights protected under the FLSA."); *E.E.O.C. v. White & Son Enter.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (holding that unofficial complaints expressed by plaintiff to her employer constitute an assertion of rights protected under the statute); *Brock v. Richardson*, 812 F.2d 121, 124 (3d Cir. 1987) (noting that the FLSA retaliation provision protects employees' activities that are "considered necessary to the effective assertion of the employees' rights"); *Love v. RE/MAX of America*, Inc., 738 F.2d 383, 387 (10th Cir. 1984) ("The Act also applies to the unofficial assertion of rights through complaints at work.").

[3]*See Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360, 364 (4th Cir. 2000) (holding that it would "not be faithful to the language" of the statute to read the FLSA so as to apply to intra-company complaints or to potential testimony in a future-but-not-yet-filed court proceeding); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993) (holding that oral complaints to a supervisor are not protected against retaliation under FLSA).

According to the court, "her discharge was a direct result of her insistence upon receiving retroactive benefits required under the [FLSA]." *Id*. at 181. Thus, "the immediate cause or motivation" of the discharge was the employee's assertion of statutory rights, thereby violating § 215(a)(3). *Id*. That the employee did not "file" a complaint or "initiate" a proceeding was irrelevant.

The decision in *Brennan* provides some support for the plaintiff here, but it is not dispositive. In *Brennan*, unlike this case, there was already an agreement in place between the Department of Labor and the employer regarding the payment of back wages. This agreement was necessarily a "proceeding" covered by § 215(a)(3). The FLSA protected the employee seeking to vindicate her FLSA rights where the formal proceeding was already in place when the employee complained and was terminated.

The Eighth Circuit decisions interpreting § 215(a)(3) make clear that the employee must engage in *protected activity* in order to be shielded from retaliation. *See Grey*, 396 F.3d at 1034-35. The "protected activities" are listed explicitly in the statute: filing a complaint, instituting or testifying in a proceeding, or serving on a committee. Workplace complaints are not included. Raising informal objections with one's supervisor is not included. Bartis is correct to point out that within the protected activities enumerated in the FLSA, there is room for broad interpretation. *See Saffels v. Rice*, 40 F.3d 1546, 1549-50 (8th Cir. 1995) (holding that the anti-retaliation provision protects an employee who was fired because the employer had a mistaken belief that the employee filed a complaint with the Department of Labor).

But the statute cannot be construed so broadly as to depart from its plain and clear language. *See Brown v. L & P Indus.*, No. 5:04CV379JLH, 2005 WL 3503637 (E.D. Ark. Dec. 21, 2005) (employee who merely contemplated filing a complaint with the Department of Labor and threatened to do so was not covered by anti-retaliation provision). *See also Haug v. Bank of America, N.A.*, 317 F.3d 832, 835 (8th Cir. 2003) ("Where the language of a statute is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary.").

Moreover, the FLSA anti-retaliation language stands in stark contrast to the anti-retaliation provision found in another labor statute, Title VII of the Civil Rights Act of 1964. That statute prohibits employer retaliation against any employee who has "*opposed any practice* made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Protection for anyone who "opposes a practice" is far broader than the protection found in the narrow limitations of the FLSA. Congress knows how to afford broad protection against retaliation when it wants to. Unlike Title VII, the FLSA anti-retaliation provision is limited in its scope and does not extend to activities that fall outside its clear text. For these reasons, Bartis's claim for unlawful retaliation under the FLSA must be dismissed.

B.  <u>State Law Claims</u>

Bartis also asserts two counts of wrongful termination under state law. Absent a contract for employment or a constitutional or statutory provision, a Missouri employee may be discharged at any time, with or without cause. *Scott v.*

*Mo. Valley Physicians, P.C.*, 460 F.3d 968, 970 (8th Cir. 2006). However, "a narrow public policy exception has been carved out to the employment-at-will doctrine." *Faust v. Ryder Comm. Leasing & Serv.*, 954 S.W.2d 383, 389 (Mo. Ct. App. 1997). The public policy exception protects the "myriad of employees without the bargaining power to command employment contracts and [who] are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." *Id.* The exception includes four categories of cases: (1) discharge because of a refusal to perform an illegal act; (2) discharge based on an employee's act of reporting violations of law or public policy to superiors or public authorities; (3) discharge based on an employee's participation in acts encouraged by public policy, such as jury duty; and (4) discharge because an employee filed a worker's compensation claim. *Scott*, 460 F.3d at 970; *Faust*, 954 S.W.2d at 390. Here, Bartis alleges that his termination fits within the first and second of these categories.

   1.   <u>Discharge for refusal to perform an illegal act</u>

In order to fit within this narrow category of protected employees, a plaintiff must show two things. First, the plaintiff must allege that the employer required conduct of the employee that violated a statute, constitutional provision, or regulation adopted pursuant to statute. *Lay v. St. Louis Helicopter Airways, Inc.*, 869 S.W.2d 173, 176 (Mo. Ct. App. 1993). "In other words, the employer directed

the employee to commit a crime." *Id*. Second, the employee must allege that he was discharged for his refusal to perform the unlawful act. *Id*. (citing *Crockett v. Mid-America Health Serv.*, 780 S.W.2d 656, 658 (Mo. Ct. App. 1989).

Here, Bartis does not allege that he was told to do anything, much less that he was told to commit a crime. Rather, he claims he told his supervisor that he thought the way in which he was being compensated was illegal. This does not constitute a "refusal to commit an illegal act" on the part of Bartis, and this exception to the employment-at-will doctrine is therefore unavailable. *See Adlophsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333, 337 (Mo. Ct. App. 1995) (plaintiff who reported his former employer's alleged violation of federal safety regulations did not thereby allege that plaintiff himself had been directed to commit a crime).

2. <u>Discharge for reporting violations of law or public policy</u>

"The term 'public policy' has generally been defined in Missouri as a legal principle stating that no one can lawfully do that which tends to be injurious to the public or against public good." *Faust v. Ryder Comm. Leasing & Serv.*, 954 S.W.2d 383, 389-90 (Mo. Ct. App. 1997). Bartis alleges that his own protest against what he perceived to be a violation of public policy should be protected.

Missouri courts have noted that, "in order to effectuate the clear mandate of public policy implicated in a given situation, it is axiomatic that the at-will

employee report or 'blow the whistle' to the proper authorities." *Faust*, 954 S.W.2d at 391. In the context of a particular case, such whistle-blowing might include reporting violations of law internally, or to third parties. *Id*. However, merely complaining about a suspected violation to one's supervisor does not constitute reporting or whistle blowing. *Id.*; *Scott v. Missouri Valley Physicians*, No. 4:03-01135-CV-W-DW, 2005 WL 2994298 at *4 (Mo. W.D. Nov. 7, 2005) ("Public policy encourages employees to report suspected criminal activity by co-employees to proper authorities in order to expose the wrongdoers, to prevent further wrongdoing, and to aid in the investigation and criminal prosecution of such wrongdoers."). Bartis does not allege that he "exposed" any illegal activity or reported any violation of law in such a way as to remedy a public ill. Rather, he complained of wrongdoing to the wrongdoer. Such action does not "further the accepted clear mandate of public policy," and it does not constitute whistle blowing. *Scott*, 2005 WL 2994298 at *4. Bartis is therefore not protected by this exception to the employment-at-will doctrine.

## Conclusion

Plaintiff's workplace complaints to his supervisor about employment practices he thought to be unlawful did not constitute protected activity under the FLSA. Additionally, his actions did not fall within any of the narrow exceptions to the employment-at-will doctrine for protecting employees who are asked to

violate the law or who blow the whistle on suspected wrongdoing.  Accordingly, plaintiff has failed to state a cause of action against his former employer.  His complaint must therefore be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion [#4] to dismiss is GRANTED, and plaintiff's complaint is dismissed in its entirety.  A separate order of dismissal is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of June, 2009.